In person, we're all fairly well zoomed out, but we still do zoom when we have to, but it's good to see people in the audience again. We were doing in person with just the lawyers, but no spectators in the bleachers, so it's good to have people in and for the oral arguments. We've got several panels sitting this week. I'm honored to be sitting with Judge Katharina Haynes from Dallas and Judge James Graves from Mississippi, and so we've got some very interesting cases on our docket, to put it mildly, for the week, and so we are looking forward to the lawyers edifying us. All of you are veterans of the system. You know the lights and so forth, but your preeminent purpose here is to answer the questions of the judges, so whatever color the light is, it will not save you from a question, so we look forward to you providing clarification for the cases. So the first case up is number 20-11236, Walter Young v. Select Portfolio. Mr. Peacock, you're up, sir. Good morning, Your Honor. Good morning. Counsel, thank you for the opportunity to present argument for Mr. Young this morning. Okay, now you've got to use your theater voice so we can hear you and so counsel can hear you, but if you just speak up, the mic will carry you. Thank you, Your Honor. Again, I'm delighted to be here and give oral argument for Mr. Young. I know that you've read the briefs, and I know that this is our opportunity, as the rules say, to emphasize and clarify. Let me ask you a question. What's the status of this house? Is he still in it? Yes. Okay. And has he been paying anything in the last several years? No, Your Honor. Pretty good deal, isn't it? Well, not really, because he has to pay us. So certainly Mr. Young's preference would be for this matter to have been resolved years ago. And Judge, to answer your question about the fact that he hasn't been evicted yet, I mentioned that he's . . . I think I did in my brief that they've tried to evict him three times, and they haven't been successful. But in all this time, he could have paid the money. All this time, this has been going on. Whatever he said, send doesn't mean receive, and all that stuff. Paid the money, he's been in there, and y'all wouldn't be here arguing this case. He's still in the house. When was this lawsuit filed? I want to say 2019. And here we are in November 1st of 2021. He's still occupying it, and the amounts owed are still owed, right? Yes. Well, no, they're not. Interestingly, when a property is foreclosed, then the note and the deed of trust are no longer effective, because he's no longer the owner. The note has been foreclosed. Okay, but if he won, then what would happen? If he won today, or whenever the opinion, or if it's reversed? If he won this case, what would happen? What would happen is that the people that bought the property at the sale would get their money back, and secondly, the note and deed of trust would be reinstated. Right, so, I mean, your argument is it is still there. Their argument is it's not still there. Because they should have the house, and he's living there as a trespasser, in essence. Well, it's unfortunate the way it played out. And Mr. Young is not asking for any gratuities. He's asking that this matter be resolved. He's ready to make his monthly payments. He has been from the start. He had one glitch in 2015, and has been trying to get it fixed from that point on. Unfortunately for Mr. Young, he had financial, he worked for FedEx, and things are up and down from time to time. As you all know, the Great Recession in 2008-2009 set a lot of people back, and so he had financial issues. Tell us what the direct path is to relief for your client. The direct path is for the note and deed of trust to be reinstated, like the lender told him in 2000, what was it, 2015, or was it 14? No, it was, I'm sorry, 16. Getting my dates mixed up. That his note and deed of trust was reinstated. Well, as you know from the briefs, they told him that in writing, but they didn't do it. They foreclosed. Under the law, and under the facts of this case, he's entitled to have that note and deed of trust reinstated so he can go onward making his regular monthly payments. I mean, that's his goal from the start. He's not asking for any gratuity. He's not asking for a free house. Being paid the money. Because there's nobody to pay to. Who are you going to pay when there's no note anymore? Put it in escrow somewhere and say, here's my good faith to want to be in here. Let's resolve this matter. Well, typically that's done in either the JP courts or the county courts whenever there's eviction processes. Yeah, but you're in the United States Fifth Circuit Court of Appeal on an eviction matter. I'm not minimizing it, but let's be real. We're talking about deed of trust, Texas case, eviction, pay the money. Did you pay it? I mean, there's no federal . . . I'm just saying. Well, the eviction matter, of course, is handled in the JP . . . Well, let me ask you a different question. What's the best case or cases you have that result in relief for your client? What's the best case in Texas, otherwise, that you're relying on to get relief from this panel? Well, number one, the Boren case, which came from this court, and number two, the Pitts case that came from the Dallas Court of Appeals that deals with this kind of situation that clearly says it's a fact issue, whether there was an abandonment. Now, since there was a fact issue, this matter needs to be decided either by jury or a bench trial in the federal court. Now, we filed this case in state court, and as you probably know from the transcript, it was removed to federal court. Now, and as you probably know, Texas is a two-track system. Evictions are handled in JP court, and if there's an appeal to the county court, and the issue of title is handled either in the state district county courts or district courts, but in this case, removed to the federal court and hence to your court. We're not asking for any gratuities at all. From the start, all this is about what the lender did. It's clearly from the transcript. They sent him a letter saying that your note and deed of trust are reinstated. All right. Reinstatement is a term of art. You see it in the deed of trust. The deed of trust is clear once it's reinstated, and I can, if it pleases the court, if we can turn to, first of all, the rescission. And that document is on page 79 of the transcript. And the rescission says, and it's dated and signed, sent to Mr. Young, October 14, 2016. And it says the very last sentence of the, after the now therefore, a wording at the top, the note and deed of trust are reinstated, subject to the amount in arrears and total amount due, and are acknowledged as valid and enforceable in accordance with their original tenor and effect. It couldn't be more clear. All right. So he's been reinstated. Now let's go and see what the deed of trust says about reinstatement. And that's on page, the particular language is on page 425 of the transcript. The language subject to the amount in arrears and total amount due. Yes, that's right. What does that mean to you? That means like, for example, if I get behind on a mortgage payment, then the amount that I'm behind is the arrears. And so I owe that. That doesn't go away. So in his case, when he got the letter, the fact that he had an arrears doesn't go away. He's going to have to pay that, okay, unless they foreclose, which is what they did in this case. Oh, that's why he didn't pay it? So when it says that reinstatement, it was subject to the amount in arrears and the total amount due, which he didn't pay? Well, he never had the chance to pay it. They foreclosed 12, 15 days later. He had no chance to do anything here. This was just an outrageous, I don't know if it was an oversight by the lender or what they were doing. So you're calling that statement a rescission of the intent to accelerate the loan. Is that what you're calling it? It's a rescission of the acceleration. I think that's what the document, the heading says. Let me go back to that. Rescission of notice substitute trustee sale. They rescinded the notice of sale. They had already sent him a letter saying we're going to foreclose in November. But then they send him this. That notice rescinded the October 4th sale, didn't it? Well, it rescinded all of them. It rescinded the October 4th sale and it rescinded all the accelerations because it clearly says that the note in need of trust are reinstated. So all rescissions, you can't have it both ways. You can't have an acceleration and at the same time a reinstatement. They're polar opposites. You either have one or the other. And in this case, they had accelerated him. But then they send him this letter and says that you're reinstated. Those are polar opposites, acceleration and reinstatement. Reinstatement is a term of art. It's used in these kind of cases. And if you look in the deed of trust, they clearly state once it's reinstated and it's on page... Is rescission a term of art? I'm sorry, Your Honor? Is rescission a term of art? I would say yes. They didn't use the word rescission in that statement. They didn't, but they said that the note in deed of trust... They rescinded this sale. They rescinded everything that had gone before. And then they reinstated his note in deed of trust. Now, in my view, in a view of what the law is, you can rely on what a lender says. I mean, the statute's clear about rescissions of acceleration. That's Chapter 16 in the Civil Practice and Remedies Code. It clearly says that a lender can unilaterally rescind an acceleration. So that's what they did. And then they say that your note in deed of trust are reinstated subject to a rearage. Well, no surprise there. I mean, you owe them money, so you have to pay it. Now... Now, going to the definition of reinstatement in the deed of trust, and it's on page 425 of the transcript... I don't think that's me. Oh, I'm sorry, it's my insulin pump. Oh. I'm sorry, it's telling me I've got high blood sugar right now. You okay? I am, I'm fine. Yes, I am. I'm doing just fine. It's... This is something that keeps me alive, so I have to wear it all the time. I just want to know if you're okay. Do you need some time, or you're squared away? I feel great, Your Honor. Okay, all right. Thank you. Thank you for the opportunity. Okay, page 425 of the transcript. In the middle of the page, in paragraph 19, in the heading for that is borrower's right to reinstate after acceleration. And if you go down to the next to the last sentence, it says, Upon reinstatement by borrower, this security instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. All right. Well, then we can agree, then, from the language of the rescission and the language here that the note and deed of trust are reinstated. So if they're... See, they can't foreclose unless they accelerate. That's what the rule is. If you look at chapter 51 of the property code in Texas, that's what it says, that it lays out what they have to do, and the deed of trust says that they have to accelerate before they foreclose. Well, the Holy Cross case says that in Texas. There's no dispute about whether or not they accelerated. Your argument is that they rescinded the acceleration. That's right. Obviously, they had to rescind it. If you reinstate the note and deed of trust, the acceleration's gone because those two cannot coexist. An acceleration and a reinstatement don't coexist. It's either one or the other. An acceleration says, all the money's due now. A reinstatement says, no, now we're going back to the regular payments of your note and deed of trust. And that's the same argument you pressed to Judge Sciola, right? Yes. Okay. And that's why we're here. Okay. All right. All right. Oh, I'm sorry. I didn't even see the whistle. You've reserved your rebuttal time and we'll hear you when you come back up. Let's hear from Select Portfolio, Mr. Danner. Thank you, Your Honor. Thank you. Good morning. Good morning. I'm Dwayne Danner. I'm here on behalf of Select Portfolio as well as U.S. Bank as trustee, the holder of the prior note of mortgage in this case. The first thing I'd like to bring up is appellant is clearly conflating rescission of an acceleration and a rescission of a foreclosure sale, October 4 foreclosure sale, which is what happened here. To kind of go backwards with what counsel was just doing for appellant in referencing the appellant record, page 425, that's section 19 of the deed of trust, just simply is inapplicable here. There are four things, A through D, that the borrower must do in order for this section to be applicable. The first one, A, is the lender all sums which would be due under the security instrument in the note as if no acceleration had occurred. That clearly did not happen. There's no evidence of any of that. So, 19 of the deed of trust doesn't really have anything to do with this. Obviously, the deed of trust is the controller. I have to say, this isn't the first case I've had where somebody disagreed with the foreclosure and they've been sitting there not paying for years. I actually had one where they hadn't paid for close to ten years. I'm not really understanding the strategy of the bank in those situations. I mean, how is this making sense? You're just sitting there not getting paid and not getting the house. What up? Yes, ma'am. In a lot of the cases, and I think the case you're speaking of, the property gets struck back off to the lender, so it's the lender that's actually in there. In this case, the property was sold to a third party. Ms. Heiken represents that party. From the lender, my clients have gotten their money. In most cases, though, Judge Haynes, that's not the case. We're still sitting on this. But you may owe it back to them if we ruled the other way and you'd have to pay them back. So you're still kind of sitting in this weird zone somewhere. I just don't understand why these aren't . . . When I was a lawyer, I remember mediations and trying to agree on things. Even though I loved arguing, I tried. So I'm just a little struggling about why these get this far. Your Honor . . . Not that you have to reveal any settlement discussion. I'm not asking that. I'm just saying I don't really understand the strategy. But I'll tell you why I believe it is the case in this one and other similar cases, and that is because the plaintiff's agreement, and counsel told you this a few minutes ago, is that the borrower pays their lawyer instead of the mortgage company to drag this out as long as they can. And as you all pointed out, he's been in the home for now many years without making any payments, no taxes, no insurance, much less a mortgage payment. And that's certainly hurting Ms. Hyken's client and mine to a certain extent because we could have to pay the money back if you all were to reverse this. That's not the case here. The rescission of the prior foreclosure sale specifically states that it puts the parties back as to the status quo immediately prior to the sale. That was that the loan was accelerated. There was no question that no payments had been made, no reinstatement had been made by the plaintiff on this. The appellant cites about three pages of cases in here. And Judge Stewart, you were on the Boren panel. And it does talk about acceleration, but it doesn't have anything to do with the facts of this case. And that is true of really pretty much all three pages of the cases that are listed there. They just don't apply to this fact pattern. And they don't provide the relief that would be available that the plaintiff cites in this case. I am happy to try to answer any questions the panel has. This is, it seems to me, a pretty simple matter. There was a foreclosure. It was rescinded. The acceleration was not rescinded. And a subsequent foreclosure went on. The appellant was offered a modification plan. Did not do what was required of the modification plan. Was advised by two letters in early January of 2017 that the modification offer, the last mitigation offer, had been denied or revoked because it had not been the plaintiff. If they were to affirm, y'all would still have to go to the Justice of the Peace Court for the eviction, right? Yes, ma'am. Ms. Heichen's client, the purchaser, would. Yes, that's correct. And if they won't evict, then what? Unless you can go mess with the Texas Supreme Court on that one. Well, we wouldn't get to come back to New Orleans. You're right on that one. That one would be down in Austin. Yes, ma'am. You'd have to go eat brisket, huh? Right, brisket instead of gumbo. That's right. Is there anything else I can try to answer for the panel? No. We're okay when counsel gives us time back. So if you feel like you've made it, we're good. I do. Thank you for your time. Thank you, Mr. Danner. All right, Ms. Heichen. Good morning. Good morning. My name is Rachel Heichen, and I represent TransAm SFE Roman Numeral II, LLC, who purchased this property almost exactly five years ago and has been deprived of possession since. And so why didn't you just cross-claim against the bank and get rid of this thing? I mean, why are you still here? Well, I'm here because Your Honor, I don't believe that there was any defect in the foreclosure sale, and obviously TransAm wishes to take possession of the property, which is why the record has some reference to numerous forcible detainer or eviction actions that were filed on TransAm's behalf. But as was noted, the issue here is whether there was a valid foreclosure sale. And the primary point If we rule that there was, will the JP let y'all have the property? Yes, Your Honor. Usually when a JP court is reluctant or a county court at law is reluctant to grant possession, it's because they're nervous there is a title issue presented that deprives that court of that is the reason that those courts will delay in ruling. So they are often awaiting a judgment on the merits on a title issue. I just wanted to mention But if we ruled against y'all, then you would get the money back from the bank. So you kind of win either way? Well, Your Honor, we have been paying taxes on the property for the last five years, so I don't think that it's an absolute win for our client, who obviously has also incurred legal expenses and other expenses in maintaining, insuring, and keeping the property free from superior liens. The point I would make, and I think Mr. Danner did a fine job of explaining why the judgment of the trial court ought to be affirmed, is that the October 4th sale refers specifically and I'm citing page 333 of the record You mean the October 4th sale? I'm sorry, the October 4th sale. There was a subsequent sale in October, wasn't there? The foreclosure sale that we purchased that was in November 2016. The October 4th, 2016 sale rescission instrument was a unilateral rescission instrument signed by, not the lender, but the substitute trustee, pursuant to 51.016 of the Texas property code. And that section of the property code, by statute, defines the effect of a unilateral rescission instrument signed by the substitute trustee. That effect is that it restores the parties to the status quo ante immediately prior to the sale. To quote it, it says that the mortgagee and the debtor are restored to their respective title, rights and obligations under any instrument relating to the foreclosed property that existed immediately prior to the sale. So the other issue is that, again, this rescission instrument was signed solely by the substitute trustee and the substitute trustee under Texas law has very narrowly circumscribed rights. In fact, it cannot abandon or accelerate alone. It cannot abandon an acceleration and it cannot accelerate alone. So, just to, again, sort of underscore the point, the interpretation that Mr. Young is asking this court to take would actually bestow rights on the substitute trustee that the substitute trustee doesn't have. And I think it's also plain from the reading of the rescission instrument that the only intent of that instrument was to restore the parties to where they were just prior to the October 4, 2016 sale. And if the court has additional questions of me, I'm happy to respond. I guess since it's the, exactly the fifth anniversary of y'all buying this, you can go have some gumbo to celebrate. I'm very much looking forward to some of the local flavors here. What's the total amount at stake, I guess, when you add up the mortgage plus the taxes and all that? What's the bottom line amount? The lenders, what's owed on the loan to SPS and U.S. Bank to date, I don't have that number. I know that my client paid $99,201 at the foreclosure sale that occurred five years ago. That's the sum of money I can speak to. Okay. Thank you. Mr. Peacock, you have the right of rebuttal. Okay. Okay. Now, let me address Ms. Heiken's remarks to the court first. I thought it was interesting that she would point out that the trustee had no authority to rescind the sale All right. Well, okay. If that's true, then the party that actually owns the property is the one that bought it at the October 4th sale, which was a different company than hers. So, I mean, this is the first time I'm seeing I mean, this is not in the pleadings, which she just alleged. But, in any event, this rescission document was issued before they ever bought the property. So, they would have been on notice that it would have been rescinded even before the sale. But let's look at the equitable considerations, because I think that's where Ms. Heiken is going with this. Number one, and Mr. Danner, she points out that, well, they've been paying taxes. Well, not only would they be entitled to reimbursement of what they paid for the property, but they would be entitled to reimbursement of the taxes that they paid also, because we all know that taxes stand in first place among the pecking order of creditors in front of lenders and anyone else. So, they're going to have a right to recover that. Secondly, I noticed the court has an interest in the fact that Mr. Young is not able to make payments on the note, since the note doesn't exist anymore when it's foreclosed. Well, so, how is money allocated? And I know each of you had questions related to this, so let me just take a minute before my buzzer goes off to address that, how that's ordinarily handled. Now, as I mentioned earlier, evictions start out in the JP court and on appeal to the county courts at law. That's how it's all addressed in the state of Texas. So, here's what the JP courts or the county courts at law will do in a case like this ordinarily. If they're going to abate the case, then what they will do is have a party to pay a certain amount of money into the registry of the court. And from time to time, for example, when taxes come due or insurance or things like that, they will file the purchaser, the third party purchaser will file a request for reimbursement with the court and typically, if it's in the JP court or the county court at law, they will issue an order to take out whatever monies are necessary to pay taxes and insurance and things like that. So, ordinarily, that's how this works. Now, in this case, for some unknown reason to me, I don't know, they never ask a JP court or a county court to do that. Now, had they requested that, then certainly, Mr. Young would have been paying money into the registry of the court. As it turns out, how this is going to play out if the court reverses and remands, how this will, the lender will have to give the third party purchaser their money back. But I thought you said there had to be a jury or bench trial. If we reverse and remand, you don't automatically win, right? You're just asking for a trial. That's correct. In other words, it would be... We've got a few more years, more anniversaries. Well, they could go to the JP court or the county court at law in the interim and ask for money to be paid in the registry of the court. And ordinarily, that's what's done. But, yes, under the Pitts case... Then another appeal? Possibly. Well, possibly, just depends on if there's any manifest errors in the trial. But hopefully, there wouldn't be. And hopefully, this would be straightforward. I think it can be decided as a matter of law for Mr. Young based on this rescission. But the Pitts case says that abandonment is a fact issue. So, abandonment of acceleration. All right, Mr. Peacock, you've got a red light. I'll give you one declarative sentence with no commas, no semicolons to end with. Yes, Your Honor. And thank you. We ask that the matter be reversed and remanded for a new trial. All right. Thank you, sir. Thank you. Thank you, counsel, on both sides for your briefing and the responses.